UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

------------------------------------------------- X

WELCH ALLYN, INC.,

                       Plaintiff,                    Civil Action No. 5:14-CV-1122
                                                    (TJM/DEP)

    -v-

OBP CORPORATION and OBP
MEDICAL INC.,

                       Defendants.

------------------------------------------------- X

## DEFENDANT'S RESPONSIVE
## BRIEF ON CLAIM CONSTRUCTION

COWAN, LIEBOWITZ & LATMAN, P.C.

1133 Avenue of the Americas
New York, New York 10036-6799
(212) 790-9200

Attorneys for Defendant/Counterclaim-Plaintiff
OBP Corporation d/b/a OBP Medical Inc.

**Table of Contents**

Page

INTRODUCTION .................................................................................................................1

    A. The Parties Proposed Claim Constructions..................................................1

    B. Defendant's Motion to Strike the Bennett and Spanfelner Declarations ......................4

    C. The Leinsing Expert Declaration ..................................................................4

ARGUMENT .......................................................................................................................5

I.    WELSH ALLYN'S DEFINITIONS ARE NOT SUPPORTED BY THE
    ORDINARY MEANING, THE PATENT DISCLOSURE OR THE
    PERSPECTIVE OF A PERSON SKILLED IN THE ART...................................6

    A. Portable Illumination Assembly  (Claims 1, 9 and 18).................................6

       1.    A "Portable" Medical Instrument Is Meant For Reuse And, In Accordance
            With Industry Usage, It May Use A Non-Portable Power Source .........6

       2.    "Portable" Has To Be Understood In The Context Of The Written
            Description And From The Perspective Of A Person Skilled In the Art................7

       3.    The Patent Claims Do Not Define "Portable Illumination Assembly" ................10

       4.    The Written Description Does Not Equate "Portable" with "Cordless"................11

    B.    Releasably attached (Claims 1 and 9)....................................................14

    C.    Mechanism for energizing said at least one LED (Claims 3, 9 and 18) ..............15

    D.    Said illumination assembly *is accessed* for at least one of energization of
          said at least one LED and removal through said opening (Claim 9) ....................18

    E.    The energization mechanism can be accessed for energizing said at least
          one LED *only* through said defined opening (Claim 18)......................................20

    F.    Disposable (Claims 7, 8, 11, 12)...........................................................21

    G.    "Lower blade," "handle portion" and "proximal end."........................................22

II.    THE BENNETT AND SPANFELNER DECLARATIONS SHOULD BE
    STRICKEN ....................................................................................................23

    A.    The Declarations Violate Local Patent Rules 4.3 and 4.4 .....................23

B.     The Declarations Should Also Be Striken As Irrelevant To Claim Construction ........................................................................................................23

1.     The Bennett Allegations Are Unsupported And Irrelevant ...................................24

2.     The Spanfelner Testimony Is Irrelevant And Improper Expert Opinion ...............25

CONCLUSION .....................................................................................................................26

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ariad Pharms., Inc. v. Eli Lilly & Co.*,
    598 F.3d 1336 (Fed. Cir. 2010).................................................................8, 9

*Aventis Pharma S.A. v. Hospira, Inc.*,
    743 F. Supp. 2d 305 (D. Del. 2010), aff'd, 675 F.3d 1324 (Fed. Cir. 2012)......................19

*Bell Atl. Network Servs. v. Covad Communs. Group*,
    262 F.3d 1258 (Fed. Cir. 2001)..........................................................................7

*CCS Fitness v. Brunswick Corp.*,
    288 F.3d 1359 (Fed. Cir. 2002)........................................................................10

*Chef Am., Inc. v. Lamb-Weston, Inc.*,
    358 F.3d 1371 (Fed. Cir. 2004)........................................................................19

*Comark Communs. v. Harris Corp.*,
    156 F.3d 1182 (Fed. Cir.1998)……………………………………….............................7

*Elekta Instrument S.A. v. O.U.R. Sci. Int'l*,
    214 F.3d 1302 (Fed. Cir. 2000)...................................................................4, 20

*InterDigital Communs., LLC v. ITC*,
    *690 F.3d 1318 (Fed. Cir. 2012)*.......................................................................11

*IPXL Holdings, L.L.C. v. Amazon.com, Inc.*,
    430 F.3d 1377 (Fed. Cir. 2005).......................................................................19

*Kaneka Corp. v. Xiamen Kingdomway Group Co.*,
    2015 U.S. App. LEXIS 9634 (Fed. Cir. June 10, 2015) .............................................11, 18

*Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898 (Fed. Cir. 2004)...................................11

*Mass. Inst. of Tech. & Elecs. for Imaging, Inc. v. Abacus Software*, 462 F.3d
    1344(Fed. Cir. 2006)………………………………………………………..........................16

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    134 S. Ct. 2120 (U.S. 2014).......................................................................21, 22

*NeoMagic Corp. v. Trident Microsystems*,
    287 F.3d 1062 (Fed. Cir. 2002)..........................................................................2

*Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314 (Fed. Cir.
    2003)………………………….... ......................................................................10

*P & G Co. v. Paragon Trade Brands, Inc.*,
989 F. Supp. 547 (D. Del. 1997)..............................................................20, 21

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) ........................................24

*In re Rambus Inc.*,
694 F.3d 42 (Fed. Cir. 2012)...............................................................10

*Regents of Univ. of Cal. v. Eli Lilly & Co.*,
119 F.3d 1559,1566 (Fed. Cir. 1997)....................................................9

*Retractable Techs., Inc. v. Becton*,
653 F.3d 1296 (Fed. Cir. 2011)........................................................8, 12

*Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*,
620 F.3d 1305 (Fed. Cir. 2010)…………………………………….......................13

*SRI Int'l v. Matsushita Elec. Corp.*,
775 F.2d 1107 (Fed. Cir. 1985) (*en banc*) ...................................2, 18

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
299 F.3d 1313 (Fed. Cir. 2002)...........................................................10

*Traffix Devices v. Mktg. Displays*,
532 U.S. 23 (2001)............................................................................25

*Univ. of Rochester v. G.D. Searle & Co.*, 358 F.3d 916 (Fed. Cir. 2004) ................8

*Watts v. XL Sys.*, 232 F.3d 877 (Fed. Cir. 2000)……………………….................. 16

*Williamson v. Citrix Online, LLC*,
2015 U.S. App. LEXIS 10082 (Fed. Cir. June 16, 2015) ..................3, 15, 16, 17

*Wilson Sporting Goods Co. v. Hillerich & Bradsby*
442 F.3d 1322, 1331 (Fed. Cir. 2006).............................................2, 18

## Other Authorities

Fed. R. Civ. P. 26 (a)(2)........................................................................4

Local Rules Of Procedure For Patent Cases, Rule 4 ...............................4, 23, 25, 26

35 U.S.C. Section § 112  ..................................................15, 16, 17, 18

## INTRODUCTION

### A.     The Parties Proposed Claim Constructions

Plaintiff Welch Allyn, Inc. ("Welch Allyn") urges the Court to construe U.S. Patent No. 8,435,175 ("the '175 patent) in a way that is impermissibly divorced from the ordinary, common-sense meaning of the claim terms to a person of ordinary skill in the art in the context of the invention that is described in the '175 patent.  With regard to the essential term "portable illumination assembly" that is used throughout the claims, Welch Allyn seeks to construe the term "portable" to mean only "cordless".   This definition is contrary to the commonly understood meaning of the word "portable" as something that can be moved without inconvenience or disassembly for the purpose of being reused in another location.  A portable electrical device can include a portable power supply (making it cordless) but that is not the defining element of portability.  Many "portable" electrical devices have a power supply that is either a cord plugged into a wall socket or a battery (non-rechargeable or rechargeable) or both.  To construe the term "portable illumination assembly" as meaning only "cordless" is to omit the primary meaning of the term.  The word "portable" literally means that an article is moveable.  According to Welch Allyn's proposed construction, any illumination assembly that is battery-powered would be "portable" regardless of the actual portability of the device.   For example, using Welch Allyn's definition of "portable", a battery-operated fire alarm that is permanently attached to the ceiling would be a "portable" device.

Welch Allyn's construction is not the meaning of "portable illumination assembly" that is given by the intrinsic evidence. There is nothing in the '175 patent claims, the written description or the file history that evidences that the patentee, acting as his own lexicographer, gave such a special and expansive definition of "portable illumination assembly."  At best for Welch Allyn, a "portable illumination assembly" is described in the '175 patent in contradictory and ambiguous

1

terms, but none of the descriptions limit the meaning of the term "portable" to "cordless." In contrast, there is ample intrinsic evidence that supports the construction of "portable illumination assembly" as including the characteristic of detachability from a speculum without disassembly, for ease of moving from one speculum to another for reuse or independent use.

Welch Allyn arrives at its distorted claim construction by using OBP's accused devices as the springboard for defining the claim terms. Welch Allyn even goes so far as to include its infringement arguments in its brief (see, e.g., page 9) and attaches its complete infringement contentions as an exhibit to its papers. This kind of claim construction methodology is improper under Federal Circuit case law. While there is nothing wrong with having the infringement dispute provide some context for claim construction, "a court may not use the accused product or process as a form of extrinsic evidence to supply limitations for patent claim language" and is forbidden from "tailoring a claim construction to fit the dimensions of the accused product or process and to reach a preconceived judgment of infringement or noninfringement." *Wilson Sporting Goods Co. v. Hillerich & Bradsby* Co., 442 F.3d 1322, 1331 (Fed. Cir. 2006). See also *NeoMagic Corp. v. Trident Microsystems*, 287 F.3d 1062, 1074 (Fed. Cir. 2002) ("It is well settled that claims may not be construed by reference to the accused device."); *SRI Int'l v. Matsushita Elec. Corp.,* 775 F.2d 1107, 1118 (Fed. Cir. 1985) (*en banc*). ("[C]laims are not construed 'to cover' or 'not to cover' the accused device. …It is only *after* the claims have been *construed without reference to the accused device* that the claims, as so construed, are applied to the accused device to determine infringement"). Welch Allyn's opening brief goes well beyond using the infringement dispute to provide context for claim construction; it blatantly advocates a claim construction that is founded solely upon Welch Allyn's infringement theories.

Welch Allyn seeks to define "releasably attached" to mean "able to be detached" thereby eliminating any meaning for the term "releasably" since almost anything can be detached if you disassemble it or apply enough force, without acting upon any structure that would "release" the article.

Welch Allyn also ignores the means-plus-function nature of the claim limitation "mechanism for energizing said at least one LED." Welch Allyn would have the Court simply replace the nonce word "mechanism," which does not describe any specific structure that can energize the LED of the illumination assembly, with the equally ambiguous word "structure." The words "mechanism" or "structure" that can energize the LED does not inform a person skilled in the art of the claimed structure, which could be anything, including a switch, a power source, a wire, or many other components that might be used to energize the LED. Under Federal Circuit precedent, most recently the *en banc* ruling last week in *Williamson v. Citrix Online, LLC*, 2015 U.S. App. LEXIS 10082 (Fed. Cir. June 16, 2015), the Court must construe "mechanism for energizing" to be limited to the specific corresponding structures described in the written description for carrying out the energizing function and their equivalents.

In addition, the claim term "said illumination assembly *is accessed* for at least one of energization of said at least one LED and removal through said opening" in claim 9 is clearly a method step, within an apparatus claim and, thus, renders the claim language indefinite. It cannot be rewritten, as Welch Allyn argues, to mean "can be accessed" in contradiction of the literal meaning of the words "is accessed."

With respect to the limitation in claim 18 that "the energization mechanism can be accessed for energizing of said at least one LED *only* through said defined opening," Welch Allyn advocates a construction that would accord no meaning to the word "only," in

contradiction of Federal Circuit precedent in *Elekta Instrument S.A. v. O.U.R. Sci. Int'l*, 214 F.3d 1302, 1307 (Fed. Cir. 2000).

**B.    Defendant's Motion to Strike the Bennett and Spanfelner Declarations**

To persuade the Court to adopt claim constructions improperly tailored to the accused OBP devices, Welch Allyn has submitted declarations of two of its employees, Tracy L. Bennett and Scott G. Spanfelner. These witnesses were never previously identified as required by the Local Patent Rules of this Court.  These declarations make irrelevant and unsupported allegations about OBP's alleged patent and trade dress infringement and about the purported ideas of the inventors that do not qualify as proper "extrinsic" evidence on claim construction. For these reasons, OBP is hereby moving to strike both of these declarations.

**C.    The Leinsing Expert Declaration**

In support of this responsive brief, OBP files the Rebuttal Expert Declaration Of Karl R. Leinsing, OBP's technical expert, ("Leinsing Rebuttal Decl."), which further addresses three of the claim terms in dispute from the perspective of a person of ordinary skill in the art, in response to Welch Allyn's opening brief.[1] Welch Allyn has advised that it will move to strike Mr. Leinsing's testimony. OBP does not yet know the legal basis for Welch Allyn's attempt to exclude Mr. Leinsing's testimony. OBP provided an expert report for Mr. Leinsing that complied with Fed. R. Civ. P. 26 (a)(2) and went well beyond the summary disclosure of claim construction testimony required by Local Patent Rule 4.3 (b) (which requires only a description of the substance of the expert's testimony and a listing of his claim construction opinions). OBP also offered to make Mr. Leinsing available for deposition but Welch Allyn declined to depose

---

[1] Mr. Leinsing reserved his right to provide rebuttal testimony in his declaration filed in support of OBP's opening brief ("Leinsing Opening Decl."). (See paragraph 76).

him. Mr. Leinsing is a well-qualified expert with a background in the design and development of medical devices and has testified as an expert in other patent cases.

Welch Allyn complains in its brief (page 25, footnote 5) that Mr. Leinsing is a paid expert and that he has recited the legal principles provided him to by OBP's counsel upon which his opinion is based. However the Local Patent Rules clearly contemplate the use of experts in claim construction proceedings, it is normal for expert witnesses to be compensated, and there is nothing wrong with an expert reciting the relevant legal principles that he has been asked to apply. OBP knows of no grounds for preventing Mr. Leinsing from offering an analysis on claim construction and believes that the Court may properly take Mr. Leinsing's analysis into account to the extent that it finds his testimony helpful in deciding how the disputed claim terms should be construed from the perspective of a person of ordinary skill in the art. In particular, Mr. Leinsing's Rebuttal Declaration is submitted to advise the Court of why Welch Allyn's claim construction contentions would be contrary to industry usage and the understanding of a person of ordinary skill in the art.

## **ARGUMENT**

OBP addresses the disputed claim terms  in order of their importance to the infringement analysis, rather than in the arbitrary and un-prioritized order in which Welch Allyn discusses them in its opening brief. The claim term "portable illumination assembly," which Welch Allyn addresses as the last point in its brief, appears in all of the asserted independent claims, so the construction of this term is of central importance to the infringement analysis.

## I. WELSH ALLYN'S DEFINITIONS ARE NOT SUPPORTED BY THE ORDINARY MEANING, THE PATENT DISCLOSURE OR THE PERSPECTIVE OF A PERSON SKILLED IN THE ART

### A. Portable Illumination Assembly (Claims 1, 9 and 18)

| *OBP's proposed definition* | *Welch Allyn's proposed definition* |
|---|---|
| "A fully enclosed housing holding the components of a light, which is attachable and detachable from a speculum without undue effort, disassembly or breakage for ease of moving from one speculum to another for reuse, or for use as a stand-alone examination light." | "A self-contained illumination assembly that is not connected to a non-portable power source, such as a cord or other tether to a power supply." |

### 1. A "Portable" Medical Instrument Is Meant For Reuse And, In Accordance With Industry Usage, It May Use A Non-Portable Power Source

Ignoring the ordinary meaning of the word "portable," Welch Allyn asks this Court to broadly construe "portable illumination assembly" to mean any self-contained illumination assembly that lacks a cord, without regard to the essential characteristics of the "portable" assembly described in the '175 patent.

The adjective "portable" in its ordinary meaning denotes an object that is capable of being moved about. The only possible purpose of moving a lighting assembly about is to re-use it in a different location. Otherwise there would be no point in moving it about or making it "portable." A device that cannot be moved without disassembly is the opposite of "portable". A dismantled device no longer functions for its intended purpose – it is just a collection of parts. Welch Allyn would have the Court ignore the ordinary meaning and common-sense connotation of calling a device "portable" and, instead, define a portable instrument as having only one characteristic, namely, cordlessness, which is not even a necessary characteristic of portability.

Not only does Welch Allyn's definition of "portable" rob the term of its plain meaning, it contradicts how a person of ordinary skill in the art would understand the term "portable" in the context of industry usage of the term "portable" and in the context of what the inventors actually invented as set forth in the written description. A person of ordinary skill in the art would be familiar with industry usage of the term "portable." In the medical device industry "portable" devices or instruments frequently include the ability to use a corded power source. See Leinsing Rebuttal Decl. ¶¶ 5-10.

The use of a corded power supply does not render a device "non-portable." Many portable devices or instruments use a corded AC power supply. For example, see Leinsing Rebuttal Decl. Exhibits A-D. Accordingly, defining the term "portable illumination assembly" to mean, broadly, only that the lighting assembly is "cordless" or has a portable power supply is contrary to industry usage of the term "portable" and is contrary to the understanding of a person of ordinary skill in the art.

## 2. "Portable" Has To Be Understood In The Context Of The Written Description And From The Perspective Of A Person Skilled In the Art

When a patent claim uses a broad term such as "portable" the term can only be usefully defined in the context of the invention as taught and disclosed in the written description. See *Bell Atl. Network Servs. v. Covad Communs. Group,* 262 F.3d 1258, 1269-1270 (Fed. Cir. 2001), citing *Comark Communs. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998). ([T]he ordinary meaning of the non-technical term "mode" is sufficiently broad and amorphous that the scope of the claim language can be reconciled only with recourse to the written description.)

In reviewing the intrinsic record to construe the claims, a court should strive to capture the scope of the actual invention. While the claims should not necessarily be limited to the disclosed embodiments, it is equally important to ensure that the claim language does not

become divorced from what the specification conveys is the invention. See *Retractable Techs., Inc. v. Becton,* 653 F.3d 1296, 1305 (Fed. Cir. 2011), *citing Phillips v. AWH Corp*., 415 F.3d 1303, 1323-24 (Fed. Cir. 2005) (*en banc*). "[T]he purpose of the written description requirement is to 'ensure that the scope of the right to exclude, as set forth in the claims, does not overreach the scope of the inventor's contribution to the field of art as described in the patent specification.'" *Ariad Pharms., Inc. v. Eli Lilly & Co.,* 598 F.3d 1336, 1353-54 (Fed. Cir. 2010), (quoting *Univ. of Rochester v. G.D. Searle & Co*., 358 F.3d 916, 920 (Fed. Cir. 2004)). The Federal Circuit has further explained that the written description of the invention plays the vital role of curtailing claims "that have not been invented, and thus cannot be described." *Id.* at 598 F.3d at 1352.

Welch Allyn's proposed claim construction commits the error of impermissibly extending the claims beyond the scope of the inventors' contribution to the art as set forth in the written description. In other words, Welch Allyn advocates a claim construction that would allow the claim language to become divorced from what the written description conveys as the invention. Speculums and small illuminators are hand-held instruments that are intrinsically "portable" in the broad sense of the word, so the meaning that is attributed to the word "portable" in the context of the invention has to be more specific. (See Leinsing Rebuttal Decl., ¶ 13). The only component of the invention that is described as "portable" is the illumination assembly. Neither the speculum itself nor "the vaginal speculum apparatus" that includes the speculum and the illumination assembly are described as "portable." This informs a person of ordinary skill in the art that the illumination assembly is uniquely "portable." *Id, ¶* 14 . Consistent with normal usage of the term "portable" in the field of medical instruments, the patent repeatedly describes the "portable illumination assembly" as being reusable, either with another speculum or alone.

Welch Allyn contends that reusability is not a proper component of the definition of a "portable illumination assembly" because there are some vague references in the '175 patent to the possibility of making the entire apparatus "disposable" (i.e., designed for a single use). But, in marked contrast to the teachings about making a speculum that is "disposable," there is no disclosure regarding the structure and materials that would be used for a disposable or single-use illumination assembly. Mr. Leinsing testified in his opening Declaration that "[a]single-use design is based on a combination of factors, including minimizing the number of different parts required, relatively low manufacturing and materials cost and low total cost to the end user as compared to the cost of employing a re-usable counterpart device" and that he could not "without researching and experimenting with various designs and materials, provide a definition of 'disposable' in relation to a portable illumination assembly except by reference to the above listed factors." (See Leinsing Opening Decl. ¶ 75).

Thus, to one of ordinary skill in the art, the patent's cryptic references to the possibility of making the entire apparatus or the illumination assembly "disposable" would seem like a suggestion for further research and development, rather than an indication that the "portable illumination assembly" is not meant for reuse. (See Leinsing Rebuttal Decl., ¶ 19). A mere suggestion for further research and development is insufficient as a written description of a single use illumination assembly . See *Ariad Pharms.* at 1356. ("In the context of this invention, a vague functional description and an invitation for further research does not constitute written disclosure of a specific inhibitor); *Regents of Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559,1566 (Fed. Cir. 1997) (holding that written description required a precise definition, such as by structure, formula, chemical name, or physical properties and more than a "mere wish or plan for obtaining the claimed chemical invention").

Accordingly, the vague references in the '175 patent to making the "entire apparatus" including the "portable illumination assembly" disposable, do not operate to deprive the term "portable illumination assembly" of the full meaning of "portable" as described in the '175 patent, including the characteristic of being movable from one speculum to another for reuse, or for independent use.

### 3. The Patent Claims Do Not Define "Portable Illumination Assembly"

Welch Allyn argues that the inventors, acting as their own lexicographer, defined "portable" as synonymous with "cordless" in the patent claims. But, as set forth in OBP's opening brief, pages 7-8, to act as its own lexicographer, a patentee must "clearly set forth a definition of the disputed claim term" other than its plain and ordinary meaning. *CCS Fitness v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002). "The patentee may demonstrate intent to deviate from the ordinary and accustomed meaning of a claim term by including in the specification expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope." *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). There is certainly no such clear definition or disavowal in the claims because the claims would define the "portable illumination assembly" differently depending on the claim. It is well established that "unless otherwise compelled . . . the same claim term in the same patent or related patents carries the same construed meaning." *In re Rambus Inc.*, 694 F.3d 42, 48 (Fed. Cir. 2012), citing *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1334 (Fed. Cir. 2003).

In Claim 1 the housing for the portable illumination assembly "retains a portable power supply, at least one LED and an integral curved light pipe." In Claims 9 and 18 the portable illumination assembly comprises "a portable power source, at least one LED, and a mechanism for energizing said at least one LED within a common housing." If Claim 1 defines "portable illumination assembly" the assembly would include a light pipe, but claims 9 and 18 do not

include a light pipe. If the definition of "portable illumination assembly" provided in claim 1 is applied to the "portable illumination assembly" in claims 9 and 18 then a "light pipe" is one of the required elements of claims 9 and 18.

Alternatively, Claims 9 and 18 would define a portable illumination assembly as including a mechanism for energizing the LED. But claim 1 does not include this element. Dependent claim 3 recites "an apparatus as recited in claim 1, wherein said portable illumination assembly includes a mechanism for energizing said at least one LED." However, if a "portable illumination assembly" is defined by claims 9 and 18, then the portable illumination assembly of claim 1 already includes a mechanism for energizing the LED, rendering claim 3 redundant. It is improper to import a claim limitation from a dependent claim into an independent claim, see *Kaneka Corp. v. Xiamen Kingdomway Group Co*., 2015 U.S. App. LEXIS 9634, 13-14 (Fed. Cir. June 10, 2015), citing *InterDigital Communs., LLC v. ITC*, 690 F.3d 1318, 1324 (Fed. Cir. 2012) (quoting *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004)("The doctrine of claim differentiation is at its strongest . . . 'where the limitation that is sought to be 'read into' an independent claim already appears in a dependent claim.'")).

In addition, as set forth in OBP's Opening Brief (pages 11-12), construing "portable illumination assembly" as including only a non-portable power source would impermissibly render the separate claim limitation "portable power supply" in claim 1 and "portable power source" in claims 9 and 18 superfluous, making the claims ambiguous. Such a claim construction is presumptively incorrect.

### 4. The Written Description Does Not Equate "Portable" with "Cordless"

Welch Allyn's argues that the written description consistently equates "portable" with "cordless" . Welch Allyn quotes the '175 patent, Col. 16:6-9, which states that ***"[d]ue to the***

***portable <u>and</u> non-tethered (cordless)*** nature of the illumination assembly 230, FIG. 7, according to this and other described embodiments that follow, the herein described speculum apparatus 200 is more versatile …". (Emphasis added). If "portable" and "non-tethered" meant the same thing, as Welch Allyn contends, both adjectives would not be used. Just as one would not define a large object as "big and large" or define a small object as "small and little," one would not define an illumination assembly as "portable and non-tethered" if these words were synonymous. The only interpretation of this phrase in accordance with common usage, particularly taking into account the different ordinary meanings of the words "portable" (capable of being carried or moved about) and "cordless" (lacking a cord), is that the words refer to two distinct characteristics: (1) portability, and (2) cordlessness.

Welch Allyn tries to imply that the written description describes the prior art corded illumination assembly as non-portable. While the written description does distinguish the use of a corded power supply from a portable power supply, there is no clear discussion to the effect that the prior art corded illumination assembly is "non-portable." (See, e.g., Col. 9:24-45). In other words the written description distinguishes a "corded" illumination assembly from a "cordless" illumination assembly, but never discusses a distinction between a "portable" and a "non-portable" illumination assembly.

The mere fact that the written description explains that corded illumination assemblies have disadvantages is irrelevant to whether the term "portable illumination assembly" *per se* is properly defined only as a self-contained assembly that is connected to a portable power source, particularly since all the claims include a "portable power supply" or "portable power source" as a separate claim limitation. In any case, it is well settled that "statements about the difficulties and failures in the prior art, without more, do not act to disclaim claim scope." *Retractable*

12

*Techs., Inc. v. Becton,* 653 F.3d 1296, 1306 (Fed. Cir. 2011)*, citing *Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.,* 620 F.3d 1305, 1315 (Fed. Cir. 2010) (concluding that statement that a prior art two-piece implant was "particularly difficult" to achieve did not disclaim two-piece implants).

In addition, as noted in OBP's opening brief (page13), the written description discloses an unclaimed method of assembling a vaginal speculum apparatus that includes a "portable illumination assembly," and  specifically teaches that the "portable illumination assembly" can be tethered or otherwise attached to an AC power supply. See '175 patent, Col. 4: 38-49. Welch Allyn fails to mention, much less explain, this obvious inconsistency in its argument.

For the reasons stated in 1 through 4 above, Welch Allyn's proposed claim construction is not supported by the disclosure of the '175 patent or by the understanding of one of ordinary skill in the art and should, therefore, be rejected. In contrast, OBP's construction is fully supported by the written description of the '175 patent and the understanding of a person of ordinary skill in the art. Welch Allyn's suggestion that the jury would find OBP's construction "confusing" is baseless. OBP's construction uses commonly understood terms.  The accused products are relatively simple handheld instruments that the jury can examine for themselves to determine whether they include a fully enclosed housing holding the components of a light, which is attachable and detachable from a speculum without undue effort, disassembly or breakage for ease of moving from one speculum to another for reuse, or for use as a stand-alone examination light.

## B. Releasably attached (Claims 1 and 9)

| *OBP's proposed definition* | *Welch Allyn's proposed definition* |
|---|---|
| "The portable illumination assembly is capable of being separated intact from the speculum without the use of tools and without breakage or disassembly." | "Able to be detached." |

Welch Allyn contends that OBP's proposed construction of "releasably attached" is improper because it partially overlaps with OBP's proposed definition of "portable illumination assembly." However, as set forth in the Leinsing Rebuttal Declaration, ¶ 21 , some overlap of "releasably attached" and "portable illumination assembly" is unavoidable because the item that is being "attached" to the handle of the speculum (claim 1) or to the upper or low blade of the speculum (claim 9) is the portable illumination assembly, which has to be attachable and detachable from a speculum without disassembly or breakage. Accordingly, the manner of the attachment to the handle or blade must allow separation of the portable illumination without disassembling or breaking it.  Welch Allyn contends that OBP's definition would require that the illumination assembly be detachable without disassembly *of the speculum*. (See Welch Allyn Opening Brief at p. 21). But Welch Allyn mischaracterizes OBP's proposed construction, which refers only to "without disassembly" of the portable illumination assembly.

Welch Allyn's contention that "releasably" attached is defined by the specification as the opposite of "integral" is not supported. There is no disclosure of an illumination assembly that is permanently attached or integral with the speculum, so a person of ordinary skill in the art would not understand "releasably attached" to mean "non-integral." (See Leinsing Rebuttal Decl., ¶ 22). In any case, Welch Allyn's proposed construction "able to be detached" is significantly broader than "non-integral" in that anything can be detached from anything else with the right tools and

the right amount of force, whether it is "integral" or "non-integral" with the part from which it is being detached. *Id.*

Welch Allyn's construction fails to give any meaning to the term "releasably." To a person of ordinary skill in the art, the term "releasably" would imply that a release mechanism is used, so that no tools are needed to disconnect the attached item, particularly since the patent does not describe the use of tools to detach the illumination assembly. (See Leinsing Rebuttal Decl., ¶ 23)

### C.    Mechanism for energizing said at least one LED (Claims 3, 9 and 18)

| *OBP's proposed definition* | *Welch Allyn's proposed definition* |
|---|---|
| "A slider switch with a conductive strip; a rotary switch with a conductive strip; an optical switch; a magnetic/reed switch; an ON/OFF throw switch that can be enabled with the speculum when engaged therewith to automatically or manually energize and de-energize the LED; and equivalents of the foregoing switches under Section § 112 (f)." | "structure that can energize the LED"  *Welch Allyn's proposed definition of "switch."* *(Dependent Claim 4)*  "structure that can be acted upon to energize the LED" |

After the filing of the parties' opening claim construction briefs the Federal Circuit rendered an *en banc* opinion in *Williamson v. Citrix Online, LLC*, 2015 U.S. App. LEXIS 10082 (Fed. Cir. June 16, 2015) that impacts how the Court should analyze whether "mechanism for energizing said at least one LED" constitutes a means-plus-function clause.

In *Williamson* the Federal Circuit abandoned its prior "strong" presumption that a limitation lacking the word "means" is not subject to Section 112, para. 6. The Federal Circuit decided that a strong presumption "is unwarranted, is uncertain in meaning and application, and has the inappropriate practical effect of placing a thumb on what should otherwise be a balanced analytical scale. … and has resulted in a proliferation of functional claiming untethered to 112,

para. 6 and free of the strictures set forth in the statute." *Id.* at 18. The Federal Circuit decided that it would henceforth apply the presumption without requiring any heightened evidentiary showing and expressly overruled its prior case law to the contrary.

The *en banc* Court expressly overruled the previously strict requirement of "a showing that the limitation essentially is devoid of anything that can be construed as structure." *Id.* The new lower standard is whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for a structure.   When a claim term lacks the word "means," the presumption can be overcome and Section 112, para. 6 will apply if the challenger demonstrates that the claim term fails to "'recite sufficiently definite structure' or else recites 'function without reciting sufficient structure for performing that function.'" *Id.* at 19*,* citing *Watts v. XL Sys.*, 232 F.3d 877, 880 (Fed. Cir. 2000)

The Federal Circuit has recently begun to refer to general terms like "means" or "mechanism" as "nonce words."  In *Williamson*, the *en banc* Court found that "module" is a "well-known nonce word that can operate as a substitute for 'means' in the context of § 112, para. 6." *Id.* at \*21. The Federal Circuit agreed with the district court that the term "module" as used in the claim at issue was simply "a generic description for software or hardware that performs a specified function."  *Id*. The *en banc* Court specifically noted that "[g]eneric terms such as '**mechanism**,' 'element,' 'device,' and other nonce words that reflect nothing more than verbal constructs may be used in a claim in a manner that is tantamount to using the word 'means' because they 'typically do not connote sufficiently definite structure' and therefore may invoke § 112, para. 6." *Id*. at \*21, *quoting Mass. Inst. of Tech. & Elecs. for Imaging, Inc. v. Abacus Software*, 462 F.3d 1344, 1354 (Fed. Cir. 2006) (emphasis added).

"Mechanism for energizing said at least one LED" uses the nonce word "mechanism" instead of "means." As set forth in the Leinsing Opening Declaration, ¶ 58, claims 3, 9 and 18 fail to recite any definite structure for performing the claimed function of "energizing said at least one LED." Accordingly, and particularly now under the lower standard set forth in *Williamson*, this claim limitation is not entitled to any presumption against the application of Section 112, paragraph 6 (now paragraph (f)). This means-plus-function limitation, must, therefore, be limited to the corresponding structure set forth in the written description that would carry out the claimed function of energizing the LED, namely:

1. a slider switch with a conductive strip;

2. a rotary switch with a conductive strip;

3. an optical switch;

4. a magnetic/reed switch;

5. an ON/OFF throw switch that can be enabled with the speculum when engaged therewith to automatically or manually energize and de-energize the LED;

6. and equivalents of the foregoing. (See Leinsing Opening Decl. ¶¶ 56, 59-61).

Welch Allyn advocates construing the limitation "mechanism for energizing said at least one LED," by essentially substituting the broad general term "structure" for "mechanism," essentially changing one nonce word to another. Welch Allyn fails to present any real analysis in support of its proposed construction. Instead, Welch Allyn urges the Court to adopt the construction solely for the purpose of capturing what it terms OBP's "switch" in the accused products, which Welch Allyn contends is "unquestionably within the scope of the claimed invention." (Welch Allyn's opening brief, page 9). Welch Allyn's reliance on its infringement contentions to support its proposed claim construction is improper. *Wilson Sporting Goods Co.*

442 F.3d at 1331. (The rule against construing claims with reference to the accused device "forbids a court from tailoring a claim construction to fit the dimensions of the accused product or process"), *See also SRI Int'l* 775 F.2d at 1118.  The term "structure for energizing" is extremely broad and exceeds the scope of the patent disclosure; it could be anything, including a switch, a power source, a wire, or many other components that might be used to energize the LED.

**Switch**: Welch Allyn insists that the Court must define the term "switch." OBP does not agree. The term "switch" is used only in a dependent claim, and since "switch" must, by definition, represent an additional narrowing limitation in view of the construction of "mechanism for energizing said at least one LED", the proper construction of "switch" cannot be broader than the specific structures identified in the patent specification and their equivalents under Section § 112 (f).

OBP also notes that Welch Allyn's proposed construction of "mechanism for energizing said at least one LED" and "switch" ("structure that can energize the LED" and "structure that can be acted upon to energize the LED" respectively) are virtually the same.  Such a construction is presumptively erroneous. As noted in see *Kaneka,* 2015 U.S. App. LEXIS 9634 at 13-14, "[t]he doctrine of claim differentiation is at its strongest . . . 'where the limitation that is sought to be 'read into' an independent claim already appears in a dependent claim."

**D.    Said illumination assembly *is accessed* for at least one of energization of said at least one LED and removal through said opening (Claim 9)**

| *OBP's proposed definition* | *Welch Allyn's proposed definition* |
| --- | --- |
| Indefinite | "The portable illumination assembly can be energized and removed through the opening." |

Welch Allyn treats this claim limitation as if it is the same as a different claim limitation in claim 18. It is not. Each separate claim limitation at issue must be considered and defined separately. Welch Allyn has long had notice of OBP's position that this claim limitation is indefinite under *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377 (Fed. Cir. 2005). OBP's position was explained in Mr. Leinsing's expert report served on April 6, 2015, but Welch Allyn claims that it does not understand the argument. The argument is simple. The words "is accessed" in their ordinary meaning refer to an action by the user. The injection of a method of use step into an apparatus claim renders the claim indefinite as a matter of law under *IPXL*. See OBP's Opening Brief, pages 18-21.

Welch Allyn essentially urges the Court to read "is accessed" as if it were written "is accessible," but fails to present any argument or analysis to support its position. Welch Allyn is unable to point to any definition in the patent that would require the words "is accessed" to be given a meaning other than their plain and ordinary meaning, namely, the passive voice of the verb "to access." See *Aventis Pharma S.A. v. Hospira, Inc.*, 743 F. Supp. 2d 305, 328-31 (D. Del. 2010), aff'd, 675 F.3d 1324 (Fed. Cir. 2012), construing a claim directed to a composition that "*is used to form*" an injectable solution as indefinite, and refusing to rewrite the plain language of the claim to mean a composition that is "capable of" being formed into an injectable solution. It is well-settled that a patent claim must be construed "as written, not as the patentees wish they had written it" and that "courts may not redraft claims …to sustain their validity." *Chef Am., Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004).

For these reasons, as more fully explained in OBP's Opening Brief, this claim limitation must be construed as indefinite.

### E. The energization mechanism can be accessed for energizing said at least one LED *only* through said defined opening (Claim 18)

| *OBP's proposed definition* | *Welch Allyn's proposed definition* |
|---|---|
| "A speculum assembly with an attached portable illumination assembly in which it is impossible to access the switch for turning on the LED of the portable illumination assembly except via the opening defined by both the lever portion and the yoke." | "the portable illumination assembly is designed to be energized by accessing the energization mechanism through the opening formed by the shape of the yoke and the lever portion" |

Welch Allyn represents that "the parties are largely in agreement on the proper construction" of this claim limitation. (See Welch Allyn Opening Brief at p. 18). This is incorrect. Welch Allyn is proposing a construction that deliberately omits the claim limitation "only." OBP believes that the word "only" has to be given its ordinary meaning in accordance with the Federal Circuit's holding in *Elekta Instrument S.A. v. O.U.R. Sci. Int'l*, 214 F.3d 1302, 1307 (Fed. Cir. 2000). In the *Elekta Instrument* decision, the Federal Circuit found that the District Court erred in its construction of the term "only within a zone extending between latitudes 30-degrees-45 degrees," to include the latitudes 0 degrees-45 degrees based upon the written description of the invention. The Federal Circuit found that the limitation "only" in the claim unambiguously meant that the zone was "solely" or "exclusively" 30-45 degrees latitude ("[T]he unambiguous language of the amended claim controls over any contradictory language in the written description." *Id*. at 1308).

Welch Allyn is asking the Court to read the word "only" out of the claim. In support of its argument that "only" does not mean that it is impossible to access the switch for turning on the LED except through the defined opening, Welch Allyn relies on *P & G Co. v. Paragon Trade Brands, Inc*., 989 F. Supp. 547, 570-571 (D. Del. 1997), where the court rejected the argument

that the term "liquid impermeable" in a diaper patent should be given its ordinary meaning of "impossible for liquid to flow through" because the inventor, acting as his own lexicographer, defined the term differently. *P & G* is inapposite here because the '175 patent does not contain any special definition of the term "only" and Welch Allyn fails to cite any such special definition. Accordingly, Welch Allyn fails to show why the term only should not be given its ordinary meaning. OBP's proposed definition, which accords "only" its ordinary connotation of specifically excluding other options and openings for accessing the switch for turning on the LED should be adopted.

### F.      Disposable (Claims 7, 8, 11, 12)

| *OBP's proposed definition* | *Welch Allyn's proposed definition* |
|---|---|
| "Indefinite" with respect to  "entire apparatus" in dependent claims 8 and 12.<br><br>The term should be construed as follows with respect to  "speculum" in claims 7 and 11.  "A three piece vaginal speculum with the three parts being made of molded plastic such as acrylic or polystyrene." |  "the speculum is designed to be discarded after a single use or a single patient use"<br><br>"the entire apparatus is designed to be discarded after a single use or a single patient use." |

A patent claim is indefinite if, read in light of the specification delineating the patent, and the prosecution history, it fails to inform, with reasonable certainty, those skilled in the art about the scope of the invention. *Nautilus, Inc. v. Biosig Instruments, Inc*., 134 S. Ct. 2120, 2124 (U.S. 2014). As set forth in the Leinsing Rebuttal Declaration, Welch Allyn's proposed construction "designed to be discarded after a single use or a single patient use" fails to inform a person of ordinary skill in the art about the scope of the claim, since it does not provide any guidance that would enable a person of ordinary skill in the art to determine whether any given vaginal speculum apparatus infringes the claims. Simply put, without structural or materials limitations,

Welch Allyn's definition does not provide information sufficient to enable a person of ordinary skill in the art to examine a vaginal speculum apparatus and determine whether it qualifies as "disposable" within the meaning of the claims. (See Leinsing Rebuttal Decl. ¶ 24). Accordingly, under Welch Allyn's proposed construction, the claim term "disposable" is indefinite under the *Nautilus* standard.

### G. "Lower blade," "handle portion" and "proximal end." (Claims 1, 2, 6, 9, 13, 14, 18)

Welch Allyn does not provide any reason why these three claim terms need to be construed. While OBP in its Infringement Contentions originally took the position that claim 14 is indefinite, it expressly withdrew this contention in a letter dated April 17, 2015, (Exhibit D to Nash Declaration filed in support of Welch Allyn's Opening Brief) wherein OPB's counsel, Mr. Jensen, advised Welch Allyn's counsel, Mr. Nash, as follows:

> "I confirm that we do not intend to pursue our indefiniteness contentions set forth in OBP's Non-Infringement, Patent Invalidity and Patent Unenforceability Contentions with regard to the following claims: 7, 11, 14, and 18. We are withdrawing these contentions in order to narrow the issues in this litigation and to reduce any unnecessary inconvenience or legal expense for the parties."

Mr. Jensen further advised Mr. Nash as follows:

> "We maintain our position that the terms "lower blade," "handle portion," and "proximal end" do not need to be construed particularly in light of OBP's withdrawal of the indefiniteness contention with respect to dependent claim 14. You have not provided any information as to the significance of these terms to the claims or defenses in this action as required by Local Patent Rule 4.4(a)(3) and we fail to see how construction of these terms has any significance to the resolution of this action."

Mr. Nash has not explained why Welch Allyn apparently still believes that "lower blade," "handle portion," and "proximal end" have to be construed following OBP's withdrawal of its indefiniteness contention with respect to claim 14, and OBP knows of no reason why the Court should be asked to construe these terms.

## II.    THE BENNETT AND SPANFELNER DECLARATIONS SHOULD BE STRICKEN

### A.    The Declarations Violate Local Patent Rules 4.3 and 4.4

In blatant disregard of the Local Rules Of Procedure For Patent Cases of the Northern District of New York, Welch Allyn has submitted the Declarations of Tracy L. Bennett and Scott G. Spanfelner,  two previously unidentified witnesses, in support of its Opening Claim Construction Brief.  When OBP requested Welch Allyn to withdraw these declarations, Welch Allyn's counsel responded that these declarations provide "basic factual information about Welch Allyn and the history of the inventions" and that OBP was "demonstrably wrong about the scope and application of the local rules".[2]

Local Patent Rules 4.3 and 4.4 governing the Exchange of Preliminary Claim Constructions and Extrinsic Evidence and the Joint Claim Construction Statement, respectively, mandate that a party must identify the "the testimony of <u>all witnesses</u> including expert witnesses" and that the identifying party "shall also provide a description of the substance of that witness' proposed testimony…" (Rule 4.3).  OBP does not understand how it is "demonstrably wrong" that these Rules required Welch Allyn  to identify the witnesses and proposed testimony that it intended to offer in support of its claim constructions.  This Court should enforce the unambiguous terms of its Rules and strike the Bennett and Spanfelner Declarations.

### B.    The Declarations Should Also Be Stricken As Irrelevant To Claim Construction

Nor is it an excuse for violation of these Rules that the Declarations are for the alleged purpose of providing the Court with "basic factual background information".  The Court may rely only upon the intrinsic evidence of the patent and certain relevant extrinsic evidence. See

---

[2] A copy of the email exchange between Welch Allyn and OBP counsel regarding these declarations is attached as Exhibit 1 to the Declaration of J. Christopher Jensen ("Jensen Decl.") filed herewith.

*Phillips,* 415 F.3d at 1314-1318. If these Declarations were not intended to provide extrinsic evidence for the Court's claim construction, then the Declarations should be also be stricken as irrelevant. The only apparent purpose for these Declarations is to prejudice the Court's construction of the disputed claim terms by the conclusory and argumentative assertions that OBP is infringing both the patent and Welch Allyn's alleged color coding trade dress and that Welch Allyn had an "idea" for a "disposable illumination assembly" in 2002. These highly disputed assertions have no bearing on the Court's claim construction and should be disregarded.

### 1.    The Bennett Allegations Are Unsupported And Irrelevant

Tracy Bennett, Welch Allyn's product manager for vaginal speculums, has filed a declaration alleging (without any supporting analysis) that OBP's products infringe the '175 patent, that OBP's products are "well-executed knock-offs of Welch Allyn's proprietary designs" (without identification of the supposed proprietary designs) and that some of OBP's products copy Welch Allyn's (unspecified) trade dress. The declaration should be stricken because her statements are unsupported and completely irrelevant to any issue before the Court on claim construction.

Dr. Bennett's allegations are also inaccurate and flatly contradicted by the record. Welch Allyn has advised that it does not sell any product that practices the '175 patent. (See Welch Allyn's Answers to OBP's First Set of Interrogatories No. 1, Jensen Decl. Exhibit 1.) Accordingly, OBP's products cannot infringe Welch Allyn's non-practiced patent and at the same time be "knock-offs" of Welch Allyn's commercial products. With regard to Welch Allyn's claim in its Complaint that it owns trade dress rights in the functional color-coding for the sizes of speculums, OBP has been seeking discovery of documents and things, including

product specimens, that would show the basis for Welch Allyn's claim of trade dress rights in the color-coding system. To date, OBP has not received any such documents or evidence that Welch Allyn's unregistered color coding is used as a trademark for identifying the source of its goods rather than as a functional feature used to identify speculum sizes. Trade dress protection may not be claimed for such product features which are presumed to be functional in the absence of a trademark registration. *Traffix Devices v. Mktg. Displays*, 532 U.S. 23, 29 (2001).

The Bennett Declaration is a transparent attempt to prejudice the Court against OBP and does not provide any evidence, background or otherwise, to guide the Court's claim construction. This Declaration should be stricken from the record.

### 2. The Spanfelner Testimony Is Irrelevant And Improper Expert Opinion

The Spanfelner Declaration similarly contains irrelevant and conclusory factual allegations, that are not supported by the record, about "ideas" that Welch Allyn supposedly had in 2002 (years before the 2005 filing of the first patent applications on which the '175 patent is based) as well as thinly disguised expert testimony that was never provided in accordance with Local Patent Rule 4.3 (b). Mr. Spanfelner, one of the named inventors on the '175 patent, opines about the qualifications and experience of one of ordinary skill in the art (paragraph 5 of his Declaration) as well the disclosure of the '175 patent (paragraphs 6-9 of his Declaration).

In an apparent belated attempt to address the fact that the '175 patent does not include any teachings regarding the structure and materials for a "disposable" illumination assembly, Mr. Spanfelner claims that in 2002 Welch Allyn had an "idea" for a "disposable" cartridge that included an LED and batteries and that this "idea" was included in the '175 patent. (Spanfelner Decl., paragraph 10). Welch Allyn's 2002 "ideas" have no bearing on how the '175 patent should be interpreted. The patent is not interpreted based on the hindsight opinion of the

inventors as to what it is that they invented, but instead is based on the patent's disclosure as understood by one of ordinary skill in the art. In addition, Mr. Spanfelner was never identified as an expert witness on claim construction under Local Patent Rule 4.3 (b), nor was the substance of his testimony as an expert or fact witness provided in accordance with the rule. For these reasons, Mr. Spanfelner's Declaration should also be stricken.

## CONCLUSION

For the above stated reasons, OBP believes Welch Allyn's proposed claim constructions should not be adopted, that OBP's claim constructions should be adopted and that the Bennett and Spanfelner Declarations should be stricken from the record.

Dated: June 25, 2015

COWAN, LIEBOWITZ & LATMAN, P.C.

By: /s/ J. Christopher Jensen
J. Christopher Jensen (507753)
Mark Montague (519053)
Catriona M. Collins (301430)
Serge Krimnus (519050)
Office and Post Office Address
1133 Avenue of the Americas New York, New York 10036-6799
Telephone: (212) 790-9200
Facsimile: (212) 575-0671
E-Mail: jcj@cll.com
E-Mail: mxm@cll.com
E-Mail: cmc@cll.com
E-Mail: sxk@cll.com

Ashley D. Hayes (511333)
Hancock Estabrook, LLP
1500 AXA Tower I
100 Madison Street
Syracuse, New York 13202
Telephone: (315) 565-4500
Facsimile: (315) 565-4600
E-Mail: ahayes@hancocklaw.com

*Attorneys for Defendants*
OBP Corporation d/b/a OBP Medical Inc.