UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

**WELCH ALLYN, INC.,**

                    *Plaintiff*,

           -vs-

**OBP CORPORATION and OBP
MEDICAL INC.,**

                    *Defendants*.

Civil Action No.
5:14-cv-01122-TJM-DEP

**WELCH ALLYN, INC.'S RESPONSIVE CLAIM CONSTRUCTION BRIEF**

**BARCLAY DAMON, LLP**
One Park Place
300 South State Street
Syracuse, New York 13202
Telephone:   (315) 425-2828

*Counsel for Welch Allyn, Inc.*

**DOUGLAS J. NASH**
**JASON S. NARDIELLO**
**BELLA S. SATRA**
        *of Counsel*

9291466

## Table of Contents

**Page**

Table of Authorities ...................................................................................................ii

Argument .................................................................................................................... 1

    I.      "mechanism for energizing" ................................................................... 3

    II.    "said speculum is disposable" and "the entire apparatus is disposable" ............. 7

        A.    "said speculum is disposable" ................................................. 7

        B.    "the entire apparatus is disposable" ....................................... 8

    III.    "said illumination assembly is accessed . . . through said opening" and "can be accessed . . . only through said defined opening" ................................... 13

    IV.    "releasably attached" ............................................................................ 17

    V.    "portable illumination assembly" ....................................................... 19

Conclusion ............................................................................................................... 23

9291466

## Table of Authorities

**Cases**

*Apple Computer, Inc. v. Articulate Sys., Inc.*, 234 F.3d 14 (Fed. Cir. 2000) ......................... 1, 16, 20

*Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286 (Fed. Cir. 2014) ..................................................... 2

*Aristocrat Techs. Austl. PTY Ltd. v. International Game Tech.*, 709 F.3d 1348 (Fed. Cir. 2013) ................................................................................................................. 3, 8

*Arlington Indus. v. Bridgeport Fittings, Inc.*, 632 F.3d 1246 (Fed. Cir. 2011) .......................... 8

*Biosig Instruments, Inc. v. Nautilus, Inc.*, 715 F.3d 891 (Fed. Cir. 2013), *vacated on other grounds*, 134 S. Ct. 2120 (2014), *remanded to* 783 F.3d 1374 (Fed. Cir. 2015) .............. 15

*Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374 (Fed. Cir. 2015) ................................ 10

*DataQuill Ltd. v. Handspring, Inc.*, No. 01 C 4635, 2003 U.S. Dist. LEXIS 2981 (N.D. Ill. Feb. 28, 2003) .................................................................................................. 3

*Dorel Juvenile Group, Inc. v. Graco Children's Prods., Inc.*, 429 F.3d 1043 (Fed. Cir. 2005) ................................................................................................................................. 18

*Greenberg v. Ethicon Endo-Surgery*, 91 F.3d 1580 (Fed. Cir. 1996) ......................................... 5

*Haemonetics Corp. v. Baxter Healthcare Corp. at al.*, 607 F.3d 776 (Fed. Cir. 2010) .............. 11

*Haliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244 (Fed. Cir. 2008) ............................. 11

*Honeywell Int'l, Inc. v. United States*, 609 F.3d 1292 (Fed. Cir. 2010) ...................................... 1

*HTC Corp. v. IPCom GmbH & Co., KG*, 667 F.3d 1270 (Fed. Cir. 2012) ................................. 16

*H-W Tech., LLC v. Overstock.com. Inc.*, 758 F.3d 1329 (Fed. Cir. 2014) ................................. 14

*In re Hiniker*, 150 F.3d 1362 (Fed. Cir. 1998) ........................................................................... 2

*In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303 (Fed. Cir. 2011) ............... 14

*IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377 (Fed. Cir. 2005) ........................ 13, 14

*John Mezzalingua Assocs. v. Corning Gilbert Inc.*, No. 5:11-cv-761 (GLS/DEP), 2012 U.S. Dist. LEXIS 166275 (N.D.N.Y. Nov. 21, 2012) ......................................... 21

*Johnson & Johnston Assoc. v. R.E. Service Co.*, 285 F.3d 1046 (Fed. Cir. 2002) (en banc) .................................................................................................................. 20

*K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356 (Fed. Cir. 1999) ...................................................... 8

*Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341 (Fed. Cir. 2009) .................................. 2, 8, 19, 22

*Kenall Mfg. Co. v. H.E. Williams, Inc.*, No. 09 C 1284, 2013 U.S. Dist. LEXIS 13724 (N.D. Ill. Feb. 1, 2013) ................................................................................................................ 16

*Koito Mfg. Co. v. Turn-Key-Tech, LLC,* 381 F.3d 1142 (Fed. Cir. 2004) .................................. 10

*Microprocessor Enhancement Corp. v. Texas Inst., Inc.,* 520 F.3d 1367 (Fed. Cir. 2008) ........................................................................................................................................ 15, 16

*Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120 (2014) .................................... 9, 10, 11, 12

*Nec Corp. v. Hyundai Elecs. Indus. Co., Ltd.*, 30 F. Supp. 2d 546 (E.D. Va. 1998) .................. 16

*Numatics, Inc. v. Balluff, Inc.*, No. 13-11049, 2014 U.S. Dist. LEXIS 176759 (E.D. Mich. Dec. 16, 2014) ................................................................................................................. 3

*PPC Broadband, Inc. v. Corning Optical Commc'ns RF, LLC,* No. 5:13-cv-538 (GLS/DEP), 2014 U.S. Dist. LEXIS 182516 (N.D.N.Y. Sept. 18, 2014) ............................... 15, 16

*Southwall Techs. v. Cardinal IG Co.*, 54 F.3d 1570 (Fed. Cir. 1995) ......................................... 3

*Sri Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107 (Fed. Cir. 1985) .......................................... 21

*Technology Patents LLC v. T-Mobile (UK) Ltd.*, 700 F.3d 482 (Fed. Cir. 2012) ....................... 1

*Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313 (Fed. Cir. 2002) ...................................... 1

*Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362 (Fed. Cir. 2012) ..................... 1, 6, 18

*Vas-Cath Inc. v. Sakharam D. Mahurkar*, 935 F.2d 1555 (Fed. Cir. 1991) ............................... 10

*V-Formation, Inc. v. Benetton Group SPA*, 401 F.3d 1307 (Fed. Cir. 2005) ............................. 18

*Vitronics Corp. v. Conceptronic*, 90 F.3d 1576 (Fed. Cir. 1996) ......................................... 2, 8, 19

*Williamson v. Citrix Online*, LLC, No. 2013-1130, 2015 U.S. App. LEXIS 10082 (Fed. Cir. June 16, 2015) ........................................................................................................ 4, 5, 6

**Statutes**

35 U.S.C. § 112(f) .................................................................................................................... 6, 22

35 U.S.C. § 112, ¶ 2 .................................................................................................................... 10

35 U.S.C. § 112, ¶ 6 ................................................................................................................... 4, 5

35 U.S.C. § 282, ¶ 2(3) ............................................................................................................... 11

9291466

**Rules**

Fed. R. Civ. P. 56......................................................................................................................9

Fed. R. Evid. 702 ......................................................................................................................3

N.D.N.Y. Local Rule 7.1 ...........................................................................................................9

Pursuant to the Uniform Pretrial Scheduling Order [*see* Dkt. 23], the plaintiff, Welch Allyn, Inc. ("Welch Allyn"), hereby submits its Responsive Claim Construction Brief.

## Argument

In its Opening Claim Construction Brief [Dkts. 37 and 38], defendants, OBP Corporation and OBP Medical Inc. (collectively, "OBP") **proposes** constructions of the disputed claim terms/phrases that ignore the purpose of the invention disclosed and claimed in U.S. Patent No. 8,435,175 (the "'175 Patent") – which, as explained in Welch Allyn's Opening Claim Construction Brief, was to make a fully disposable illuminated vaginal speculum without a tethered power cord that reduces "hot spots," obstructed views and contamination at the light source. *See Apple Computer, Inc. v. Articulate Sys., Inc.*, 234 F.3d 14, 25 (Fed. Cir. 2000) ("[T]he claim must be interpreted in light of the written description and the purpose of the invention."); *Technology Patents LLC v. T-Mobile (UK) Ltd.*, 700 F.3d 482, 493-494 (Fed. Cir. 2012) (construing claim in light of the invention's purpose); *Honeywell Int'l, Inc. v. United States*, 609 F.3d 1292, 1299 (Fed. Cir. 2010) (construction proper in light of the invention's purpose).

Instead, OBP either urges the Court to adopt unreasonably broad constructions in an attempt to have the scope of the asserted claims artificially read on the prior art or, in other instances, commits the "cardinal sin" of claim construction by importing limitations into the claims from the exemplary embodiments disclosed in the specification in an attempt to manufacture non-infringement defenses. *See, e.g.*, *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1324 (Fed. Cir. 2002) (holding that it is a "cardinal sin" to import limitations from the specifications into the claim); *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1366 (Fed. Cir. 2012) ("We do not read limitations from the specification into claims; we

do not redefine words.  Only the patentee can do that."); *Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1348 (Fed. Cir. 2009) ("The claims, not specification embodiments, define the scope of patent protection.  The patentee is entitled to the full scope of his claims, and we will not limit him to his preferred embodiment or import a limitation from the specification into the claims").  The Court should decline OBP's invitation to commit reversible error, and should instead adopt the constructions proposed by Welch Allyn, which focus on the clear and unambiguous language of the asserted claims as informed by the teachings in the '175 Patent's specification, as they would be understood by a person of ordinary skill in the art at the time of the invention.  *See Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1298 (Fed. Cir. 2014) (stating that "the name of the game is the claim"); *In re Hiniker*, 150 F.3d 1362, 1369 (Fed. Cir. 1998) (same).

OBP relies heavily on the Declaration of Karl R. Leinsing ("Leinsing Decl.") to support its constructions and other positions.  Yet, the declaration is extrinsic evidence which is accorded no weight when, as is the case here, it conflicts with the intrinsic record (*i.e.*, the claims, the specification, and the patent's prosecution history), or where there is no ambiguity in the claims permitting the use of extrinsic evidence.  *See Vitronics Corp. v. Conceptronic*, 90 F.3d 1576, 1584 (Fed. Cir. 1996) ("Where the patent documents are unambiguous, expert testimony regarding the meaning of a claim is entitled to no weight."); *Kara Tech. Inc.*, 582 F.3d at 1348 (court should "discount any expert testimony that is clearly at odds with the claim construction mandated by the claims themselves, the written description, and the prosecution history . . . .") (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005)).

Moreover, the Leinsing declaration is simply a walking, talking conclusion, devoid of any substantive analysis concerning the issue the Court is being asked to decide.  Indeed, while

claiming to be a person of ordinary skill in the art, Mr. Leinsing offers absolutely no discussion of **why** a person of ordinary skill would conclude as he does. It is all because "I said so" which is not proper expert testimony. Mr. Leinsing appears to be little more than a highly-paid puppet for OBP's attorneys, and "his" declaration is just attorney-drafted legal arguments proffered under the guise of independent and reasoned expert analysis. It should be accorded no weight. *See Aristocrat Techs. Austl. PTY Ltd. v. International Game Tech.*, 709 F.3d 1348, 1360-1361 (Fed. Cir. 2013) (rejecting expert declaration at *Markman* that purported to "explain 'how' a person of ordinary skill in the art would understand the term, but [did] not explain 'why'"); *Southwall Techs. v. Cardinal IG Co.*, 54 F.3d 1570, 1578 (Fed. Cir. 1995) (rejecting "testimony [that] provides only conclusory legal opinions as to [a term] rather than evidence of how that term is commonly used and understood in the art"); *Numatics, Inc. v. Balluff, Inc.*, No. 13-11049, 2014 U.S. Dist. LEXIS 176759, *6 (E.D. Mich. Dec. 16, 2014) (rejecting expert testimony under Fed. R. Evid. 702; "An expert witness who is merely a party's lawyer's avatar contributes nothing useful to the decisional process"); *DataQuill Ltd. v. Handspring, Inc.*, No. 01 C 4635, 2003 U.S. Dist. LEXIS 2981, *11 (N.D. Ill. Feb. 28, 2003) (holding the expert declaration failed to comply with Fed. R. Evid. 702 [needs to be marked; "We doubt the value . . . of a hired expert's opinion when the party hiring him has put words in his mouth--or in this case, in his report--leaving him, in essence, a highly qualified puppet").

## I.      "mechanism for energizing"

| Claim Term/Phrase | Welch Allyn's Construction | OBP's Construction |
|---|---|---|
| "mechanism for energizing"<br><br>(*Claims 3, 9, 18*) | Structure that can energize the LED<br><br>To the extent that phrase is construed pursuant to 35 U.S.C. § 112(f), the claimed mechanism corresponds to at least the structure disclosed at Col. 12, lines 27-45, and equivalents thereof. | A slider switch with a conductive strip; a rotary switch with a conductive strip;  an optical switch; a magnetic/reed switch; an ON/OFF throw switch that can be enabled with the speculum when engaged therewith to automatically or manually energize and de-energize the LED; and equivalents of the foregoing switches under Section 112 (f). |

| | | Or, if not construed under Section 112(f): |
| | | "A device that includes a conductive part that connects the conductors of an LED to a power source in order to energize the LED." |

Claims 3, 9, and 18 require the claimed specula to have a "mechanism for energizing" the LED used in the portable illumination assembly.[1]

OBP argues that "mechanism for energizing" is a means-plus-function clause pursuant to 35 U.S.C. § 112, ¶ 6, and therefore is limited to specific examples in the specification. (*See* OBP's Brief, pp. 15-18.) The use of the word "means" in a claim creates a rebuttable presumption that the drafter intended to invoke § 112, ¶ 6, while, as in this case, failure to use the word "means" creates a rebuttable presumption that the drafter did **not** intend the claims to be governed by § 112, ¶ 6. *See Williamson v. Citrix Online*, LLC, No. 2013-1130, 2015 U.S. App. LEXIS 10082, *19 (Fed. Cir. June 16, 2015). "When a claim term lacks the word 'means,' the presumption can be overcome and § 112, para. 6 will apply if the challenger demonstrates that the claim term fails to 'recite sufficiently definite structure' or else recites 'function without reciting sufficient structure for performing that function.'" *Id.* "The standard is whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure." *Id.*

---

[1] Claims 4, 15, and 19 add the further limitation that the mechanism comprises a "switch." In its Opening Claim Construction Brief, OBP did not discuss or refute Welch Allyn's proposed construction of "switch" despite contending that the term "switch" excludes pull-tab switches, which are used in OBP's specula. (*See* Welch Allyn's Opening Claim Construction Brief [Dkt. 39].) For a complete discussion of the term "switch," Welch Allyn respectfully refers the Court to its Opening Claim Construction Brief. (*See id.*) Additionally, there is a sixth claim term/phrase, consisting of the related terms "lower blade," "handle portion" and "proximal end (of the lower blade), for which Welch Allyn has proposed constructions and OBP did not refute or address in its opening brief. Welch Allyn respectfully refers the Court to its Opening Claim Construction Brief for discussion of the construction of these terms as well. (*See id.*)

- 4 -

In *Williamson*, the Federal Circuit noted that "[g]eneric terms such as 'mechanism,' 'element,' 'device,' and other nonce words that reflect nothing more than verbal constructs may be used in a claim in a manner that is tantamount to using the word 'means' because they '**typically** do not connote sufficiently definite structure' and therefore may invoke § 112, para. 6." *Id.* at *21 (emphasis added).  The claim at issue in *Williamson* used the term "distributed learning control module," and, like the other examples given, the Federal Circuit noted that the term "'[m]odule' is a well-known nonce word that can operate as a substitute for 'means' in the context of § 112, para. 6." *Id.* at *20-21.  In reviewing the language of the entire claim, the Federal Circuit held that none of the language imparted any structure to the claimed "module," and thus found that the term was a mean-plus function limitation pursuant to § 112, ¶ 6. *Id.* at *24-25.

In this case, however, although the term "mechanism" admittedly can be a generic term standing alone, the rest of the claims in which it appears unquestionably impart structure to the mechanism.  Tied to the mechanism for energizing is a portable illumination assembly, a power source, an LED, and a housing that retains all of that structure, including the mechanism for energizing.  Where "[t]he standard is whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure," and where a person of ordinary skill in the art unquestionably would recognize terms like "illumination assembly," "power source," "LED" and "housing" as structure tied to the "mechanism for energizing," OBP cannot rebut the presumption that the drafter did **not** intend the term "mechanism for energizing" to be governed by § 112, ¶ 6. *See id.* at *19-25; *see also Greenberg v. Ethicon Endo-Surgery*, 91 F.3d 1580 (Fed. Cir. 1996) (rejecting means-plus-function treatment of the term "detent mechanism" where there was no suggestion in claim

- 5 -

language and prosecution history that patentee intended to so claim despite the literal definition of "detent" was a function).[2]

Thus, because it is not a means-plus-function limitation, OBP's attempt to limit the scope of the term to some but not all of the examples given in the specification is an impermissible attempt to import into the claims selective limitations from the specification. *See, e.g.*, *Thorner*, 669 F.3d at 1366 ("We do not read limitations from the specification into claims; we do not redefine words.  Only the patentee can do that.").

Moreover, even if it were a means-plus-function element, the **selective** examples given in OBP's proposed construction ignore the explicit teaching in the specification of other types of switches and that **any type of mechanism** can be used to energize the LED.   (*See* '175 Patent, Col. 12, lines 34-40; *see also* Col. 21, lines 5-12; Col. 2, lines 59-60.)   The patent makes clear that a "mechanism for energizing" the LED can be any type of structure that can energize the LED, and that is how the Court should construe the term.   In fact, OBP cites to the same passage, Column 12, lines 34-40 (*see* OBP's Brief, p. 17), but what OBP glaringly ignores is that even if this were construed as a means-plus-function limitation, the patent expressly teaches that "other forms of switch assemblies, such as, but not limited to optical switches . . . and other mechanical switches . . . can be utilized" **and** the literal scope of "mechanism for energizing" necessarily includes the "equivalents thereof" of **all** the corresponding structures.   *See* 35 U.S.C. § 112(f). Further, there is absolutely no support in the specification, and indeed OBP points to none, for OBP's alternative construction limiting the term to a "device that includes a conductive part that connects the conductors of an LED to a power source in order to energize the LED."   These are

---

[2] In *Williamson*, the Federal Circuit cited *Greenberg* with approval when it adopted the standard to be applied to the presumption when a claim does not use the term "means."  *See Williamson*, 2015 U.S. App. LEXIS 10082, at *18-*19.

limitations that OBP has simply made up in an attempt to read out the scope of the claims the pull-tab switch used in its accused products, and the Court should reject them.

## II.   **"said speculum is disposable" and "the entire apparatus is disposable"**

| Claim Term/Phrase | Welch Allyn's Construction | OBP's Construction |
|---|---|---|
| "said speculum is disposable"<br><br>(*Claims 7, 11*) | The speculum is designed to be discarded after a single use or a single patient use | A three piece vaginal speculum with the three parts being made of molded plastic such as acrylic or polystyrene. |
| "the entire apparatus is disposable"<br><br>(*Claims 8, 12*) | The entire apparatus is designed to be discarded after a single use or a single patient use | Indefinite.<br><br>Or in the alternative:  A device designed for single use that is made of fewer parts and less expensive material than its reusable counterpart, that is not designed for re-sterilization and that can be disposed of in a standard waste disposal facility with an overall end user cost that is competitive with a multiple use counterpart device. |

### A.   **"said speculum is disposable"**

Claims 7 and 11 require that "said speculum is disposable" and the claims are clear on their face.  When the claims require "said speculum is disposable," they mean that at least the speculum is designed to be discarded after a single use or a single patient use.  (*See, e.g.*, '175 Patent, Col. 1, lines 20-24 ("This application generally relates to the field of hand-held medical diagnostic instruments, and more particularly to a vaginal speculum apparatus including **a single-use** or **single patient speculum** that distributes illumination from at least one illumination assembly attached to the speculum.") (emphasis added).)

In fact, OBP agrees with Welch Allyn's construction, as OBP states that the "term 'disposable' in relation to medical instruments denotes a device that is designed for single-use." (*See* OBP's Brief, p. 23; *see also*  OBP-Medical-ER-SPEC-Product-Brochure.pdf, p. 2, Nash Decl.,  Ex. I  [Dkt. 39-13];  Infringement  Contentions,  Chart A,  p. 11  (discussing  Asserted Claims 7 and 8); Chart B, pp. 8-9 (discussing Asserted Claims 11 and 12); Nash Decl., Ex. F

- 7 -

[Dkt. 39-9].)   Nonetheless, OBP would have the Court impermissibly import into the claims a series of limitations for which there is absolutely no support – *i.e.*, limiting the claimed specula to "three parts" which are "made of molded plastic such as acrylic or polystyrene."  (*See* OBP's Brief, pp. 23-25.)   Those limitations are nowhere in the claims, the specification, or the prosecution history of the '175 Patent.  Once again, OBP has just made them up and they should be rejected.  *See Arlington Indus. v. Bridgeport Fittings, Inc.*, 632 F.3d 1246, 1253 (Fed. Cir. 2011) (reversing district court's claim construction because it violated the "bedrock" principle that it is the language in the claims that defines the scope of the invention); *K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1364 (Fed. Cir. 1999) ("Courts do not rewrite claims; instead, we give effect to the terms chosen by the patentee.").  Moreover, OBP's construction, on its face, relates only to a speculum at best and reads out the term "disposable."  OBP's reliance on the Leinsing Declaration is likewise misplaced.  For one thing, because the patent is unambiguous and Mr. Leinsing's position is "clearly at odds with the claim construction mandated by . . . the written record of the patent," his Declaration should be accorded no weight.  *See Kara Tech. Inc.*, 582 F.3d at 1348; *Vitronics Corp.*, 90 F.3d at 1584 (expert testimony to be given no weight when "patent documents are unambiguous").  Moreover, Mr. Leinsing simply offers a bald "because I say so" conclusion without any explanation.  *See Aristocrat Techs.*, 709 F.3d 1348 (rejecting expert declaration at *Markman* that purported to "explain 'how a person of ordinary skill in the art would understand the term, but [did] not explain 'why'").

    **B.**    **"the entire apparatus is disposable"**

Claims 8 and 12 add the limitation that "the entire apparatus is disposable" and the claims are clear on their face.  When the claims require "the entire apparatus is disposable," they mean that the entire apparatus (including the portable illumination assembly) is designed to be

- 8 -

discarded after a single patient use.  (*See, e.g.*, '175 Patent, Col. 4, lines 35-37 ("According to one version, the speculum is **disposable**, [a]lternatively, **the entire apparatus, including the illumination assembly, is disposable**.") (emphasis added); Col. 24, lines 44-46 ("Alternatively, the speculum 710 and illumination assembly 704 **can each be discarded following single or single patient use**.") (emphasis added); Col. 29, lines 40-44 ("**the illumination assembly** discussed with regard to each of the embodiments **can be** either **a disposable version** or, as described by a number of embodiments herein, a reusable assembly that can be attached to a disposable speculum.") (emphasis added).)

Despite clearly understanding the term "disposable" with respect to the speculum, OBP suddenly and inexplicably becomes confused about the term "disposable" when Asserted Claims 8 and 12 require "the entire apparatus [to be] disposable[,]" which refers to the entire speculum, including the portable illumination assembly.[3]   (*See* OBP's Brief, pp. 23-25.) Unfortunately, the reason for OBP's feigned confusion is all too clear.  As psychologist Abraham Maslow once said, "if all you have is a hammer, everything looks like a nail."  OBP, like many infringers these days, has read the Supreme Court's decision in *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120 (2014), and now everywhere it looks, all it sees is indefiniteness.

The fact is, if OBP thinks a person of ordinary skill in the art can understand what "disposable" means in one context, there is no rational reason why that term should not carry the

---

[3] OBP has argued that this "claim limitation is potentially dispositive of OBP's claim of invalidity with respect to dependent claims 8 and 12 . . . ."  (Joint Claim Construction Statement, Exhibit A, p. 3 [Dkt. 36].)  Thus, OBP is seeking to resolve the issue of invalidity in the context of claim construction, and thus it is seeking summary judgment on validity.  Yet, it failed to comply with the requirements of Fed. R. Civ. P. 56 and N.D.N.Y. Local Rule 7.1, which would have allowed the Court to see that, at best for OBP, there are disputed underlying facts that prevent it from granting summary judgment.  OBP's request should be denied for this reason alone.

- 9 -

same meaning in another context.  OBP's complaint about the term "disposable" in Asserted

Claims 8 and 12 appears not to be that it doesn't understand the term (as noted above, it clearly

does), but rather, that, according to OBP, there is inadequate written description in the

specification for it to know how to make the entire apparatus disposable.  While Welch Allyn

strongly disagrees with that suggestion, that is not an issue of claim construction, it is an issue of

disputed fact concerning validity that will need to be resolved at trial.  *See Koito Mfg. Co. v.

Turn-Key-Tech, LLC,* 381 F.3d 1142, 1149, 1154 (Fed. Cir. 2004) ("Whether a specification

complies with the written description requirement . . . is a question of fact" and holding that

defendants' expert testimony "was conclusory and also in error given that it ignored the

teachings of" the patent); *Vas-Cath Inc. v. Sakharam D. Mahurkar*, 935 F.2d 1555, 1563 (Fed.

Cir. 1991) (reversing summary judgment for accused infringer and reiterating that "[o]ur cases

also provide that compliance with the 'written description' requirement of § 112 is a question of

fact, to be reviewed under the clearly erroneous standard.").

In any event, OBP's indefiniteness challenge should be rejected.  In *Nautilus*, the

Supreme Court revised the legal standard for invalidity challenges to patent claims based upon

the definiteness requirement of 35 U.S.C. § 112, ¶ 2.  In doing so, the Supreme Court reaffirmed

that **<u>definiteness is viewed exclusively from the standpoint of a person of ordinary skill in

the relevant art</u>.**  *See Nautilus*, 134 S. Ct. at 2130; *Biosig Instruments, Inc. v. Nautilus, Inc.*,

783 F.3d 1374 (Fed. Cir. 2015) (on remand from the Supreme Court, affirming prior finding of

no indefiniteness).  Patent claims are only indefinite if such claims "read in light of the

specification delineating the patent, and the prosecution history, fail to inform, with reasonable

certainty, those skilled in the art about the scope of the invention." *Nautilus*, 134 S. Ct. at 2124.

Claims do not have to be absolutely precise or certain.  *Id.* at 2129 ("recognizing that absolute

precision is unattainable").  "[T]he certainty which the law requires in patents is not greater than is reasonable, having regard to their subject-matter."  *Id.*  "Some modicum of uncertainty, the Court has recognized, is the 'price of ensuring the appropriate incentives for innovation.'"  *Id.* at 2128 (citation omitted).

Thus, the Supreme Court refocused the definiteness inquiry on **what is reasonably certain to a person of ordinary skill in the art** of the patent.  *Id.* at 2124, 2129.  Moreover, the law presumes that any issued patent claim is reasonably certain to a person of ordinary skill, and it is incumbent on OBP, as the challenger, to prove otherwise by clear and convincing evidence. Definiteness is an invalidity defense.  *Id.* at 2125 ("A lack of definiteness renders invalid 'the patent or any claim in suit.'"); 35 U.S.C. § 282, ¶ 2(3).  Because patents are presumed under the law to be valid, they are presumed to be definite.  *See Nautilus*, 134 S. Ct. at 2130, n.10 (holding the presumption of validity "incorporates th[e] definiteness requirement").  To overcome this presumption, OBP must prove **by clear and convincing evidence** that a person of ordinary skill would have viewed the claim(s) as indefinite at the time of the invention.  *See Haemonetics Corp. v. Baxter Healthcare Corp. at al.*, 607 F.3d 776, 783 (Fed. Cir. 2010); *Haliburton Energy Servs., Inc. v. M-I LLC,* 514 F.3d 1244, 1249-1250 (Fed. Cir. 2008).

OBP argues that the term is indefinite not because there is any actual confusion about what the term "disposable" means, but rather, because OBP alleges that neither the patent nor file history specify the materials or number of parts to be used for a disposable portable illumination assembly, so as to "minimize the number of different parts required, relatively low manufacturing and materials cost and low total cost to the end user as compared to the cost of employing a re-usable counterpart device."  (*See* OBP's Brief, pp. 23-25.)  Mr. Leinsing, for whatever his conclusory statements are worth, adds the further complaint that the specification

does not, according to him, discuss batteries suitable for use in a disposable or single-use portable illumination assembly.  (*See* Leinsing Decl., ¶ 74.)  Even if what OBP and Mr. Leinsing have said about what amounts to mere design choices were true, which it is not, that is not the test for indefiniteness.  Frankly, it is not even the test for written description, which is really the argument OBP is trying to cobble together.

Patent claims are indefinite **<u>only</u>** if such claims when "read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention."  *See Nautilus*, 134 S. Ct. at 2129.  Here, OBP has effectively conceded that, as explicitly taught by the specification, a person of ordinary skill in the art would understand that the term "disposable" means designed to be discarded after a single use.  (*See* OBP's Brief, p. 23; *see also* OBP-Medical-ER-SPEC-Product-Brochure.pdf, p. 2, Nash Decl., Ex. I [Dkt. 39-13]; Infringement Contentions, Chart A, p. 11 (discussing Asserted Claims 7 and 8), Nash Decl., Ex. F [Dkt. 39-9]; Chart B, pp. 8-9 (discussing Asserted Claims 11 and 12), Nash Decl., Ex. F [Dkt. 39-9].)  Thus the phrase "the entire apparatus is disposable" is just as clear, and would be understood by a person of ordinary skill in the art (and frankly anyone else for that matter) as meaning that the entire apparatus (*i.e.*, speculum and the portable illumination assembly) is designed to be discarded after a single use or, because it is a medical product, a single patient use.  The scope of the claimed invention is clear, and thus, persons of ordinary skill in the art designing specula are on notice of that scope.  If the entire apparatus is designed to be discarded after a single patient use, it meets this claim limitation regardless of what design choices are made with respect to the number and size of the

- 12 -

components or type of battery used.[4]   The term is not indefinite, and OBP's arguments to the contrary should be rejected.

**III.    "said illumination assembly is accessed . . . through said opening" and "can be accessed . . . only through said defined opening"**

| Claim Term/Phrase | Welch Allyn's Construction | OBP's Construction |
|---|---|---|
| "said illumination assembly is accessed . . . through said opening" (*Claim 9*) | The portable illumination assembly can be energized and removed through the opening | Indefinite. |
| "can be accessed . . . only through said defined opening" (*Claim 18*) | The portable illumination assembly is designed to be energized by accessing the energization mechanism through the opening formed by the shape of the yoke and the lever portion | A speculum assembly with an attached portable illumination assembly in which it is impossible to access the switch for turning on the LED of the portable illumination assembly except via the opening defined by both the lever portion and the yoke. |

Claim 9 requires that the portable "illumination assembly is accessed for at least one of energization of said at least one LED and removal through said opening."  Claim 18 similarly requires that "the energization mechanism can be accessed for energizing said at least one LED only through said opening."

OBP seeks to transform Claim 9 into something it is not – namely, a hybrid claim created by combining an apparatus with a method.  To do so, OBP incorrectly relies on the Federal Circuit's decision in *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377 (Fed. Cir.

---

[4] As for OBP's arguments about materials, etc., it was well known at the time of the invention how to make a disposable medical device, including those with portable illumination assemblies. (*See* Supplemental Declaration of Scott G. Spanfelner, ¶¶ 7-14.)  At the very least there is a factual dispute concerning this issue.  With respect to Mr. Leinsing's complaint about batteries, as any child whose toy has run out of batteries knows, the concept of a disposable battery is not exactly shrouded in mystery.  Moreover, despite Mr. Leinsing's suggestions to the contrary, the specification does talk about different types of batteries that can be used in a portable illumination assembly.  (*See, e.g.*, '175 Patent, Col. 19, lines 58-63; Col. 22, lines 28-31; Col. 23, lines 10-13.)

2005).  But this is another example of OBP walking around with its hammer and looking for nails to pound.  The claim at issue in *IPXL* is very different than the claim at issue here.

In *IPXL*, the relevant claim was as follows:

> The **system of claim 2** [including an input means] wherein the predicted transaction information comprises both a transaction type and transaction parameters associated with that transaction type, and **the user uses the input means** to either change the predicted transaction information or accept the displayed transaction type  and transaction parameters.

*Id.* at 1384 (emphasis and alteration in original).  There, the Federal Circuit held the claim indefinite because the claim failed to make clear whether infringement would occur "when one creates a system that allows the user to change the predicted transaction information or accept the displayed transaction, or whether infringement occurs when the user actually uses the input means to change transaction information or uses the input means to accept a displayed transaction."  *Id.*  The *IPXL* claim, in other words, was ambiguous because it recited both a system that allowed a user to practice a method step and the user's practicing the method step.  *Id.*; *see also, e.g.*, *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1318 (Fed. Cir. 2011) (finding *IPXL* invalidity where "the language used in Katz's claims ('wherein . . . callers digitally enter data' and 'wherein . . . callers provide . . . data') is directed to user actions, not system capabilities"); *H-W Tech., LLC v. Overstock.com. Inc.*, 758 F.3d 1329, 1336 (Fed. Cir. 2014) (finding *IPXL* invalidity where "disputed language . . . is nearly identical to the disputed language in" *IPXL*).

The claim at issue here does no such thing.  Rather, Claim 9 in the '175 Patent merely requires that

> said movement mechanism including **a lever portion extending from a proximal end of said upper blade and defining an opening**, said portable illumination assembly being entirely contained within the proximal end of one of said upper blade and said lower blade and releasably attached thereto and **in which said illumination assembly is accessed for at least one of**

- 14 -

**energization of said at least one LED and removal through said opening**.

(Emphasis added.)  In doing so, the claim uses functional language to describe a structure (*i.e.*, the opening defined by a lever portion and proximal end of the upper blade) that is sized to be capable of performing the identified functions (*i.e.*, allowing access to the portable illumination assembly for energization or allowing access to the portable illumination assembly for removal).

This type of claim drafting is perfectly acceptable and does not render the claims indefinite.  Indeed, in the context of holding that an apparatus claim was not indefinite, the Federal Circuit has held that "this court's jurisprudence does not proscribe drafting or defining claims in relation to their functions."  *Biosig Instruments, Inc. v. Nautilus, Inc.*, 715 F.3d 891, 903-904 (Fed. Cir. 2013) (citations omitted), *vacated on other grounds*, *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120 (2014), *remanded to Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374 (Fed. Cir. 2015); *Microprocessor Enhancement Corp. v. Texas Inst., Inc.*, 520 F.3d 1367, 1375 (Fed. Cir. 2008) ("apparatus claims are not necessarily indefinite for using functional language").

In fact, this Court has already rejected an argument similar to that advanced by OBP.  In *PPC Broadband, Inc. v. Corning Optical Commc'ns RF, LLC,* No. 5:13-cv-538 (GLS/DEP), 2014 U.S. Dist. LEXIS 182516, *45-*46 (N.D.N.Y. Sept. 18, 2014), this Court rejected as "misguided" the accused infringer's argument that the limitation "without rotation" was a method step and that "someone is required to slide the fastener member toward the connector body (with or without rotation)."  *Id.* at *45, *PPC Broadband, Inc. v. Corning Optical Commc'ns RF, LLC,* adopted *by* 2015 U.S. Dist. LEXIS 25589 (N.D.N.Y. Mar. 3, 2015).  Rather, "[u]nlike in *IPXL Holdings*, it is clear that infringement of Claim 3 occurs when an individual creates a connector, as described in Claim 1, that includes a fastener member **capable of being moved**

- 15 -

from its preinstalled configuration towards the connector body without being rotated." *See id.* at *45-*46 (emphasis added); *see also Microprocessor Enhancement*, 520 F.3d at 1375 (claim at issue "is clearly limited to a pipelined processor possessing the recited structure and *capable* of performing the recited functions, and is thus not indefinite under *IPXL*") (emphasis in original); *HTC Corp. v. IPCom GmbH & Co., KG*, 667 F.3d 1270, 1277 (Fed. Cir. 2012) (no invalidity under *IPXL* where "claims merely establish those functions as the underlying network environment in which the mobile station operates").  Here, OBP is equally misguided as it is clear that infringement of Claim 9 occurs when an individual creates a speculum that includes a portable illumination assembly that can be (*i.e.*, is capable of being) energized and removed through the opening.

The parties are largely in agreement with respect to Claim 18, but the one substantive area of disagreement is OBP's contention that it must be "impossible" to access the energization mechanism except through the opening.  The claim language does not require such an extreme and inflexible construction nor does the specification support that type of limitation.  Instead, the claim merely requires that the portable illumination assembly be designed to be energized by accessing the energization mechanism through the opening.  Whether some other way may be possible is not controlling.  *See Apple Computer, Inc.*, 234 F.3d at 25 ("the claim must be interpreted in light of the written description and the purpose of the invention"); *Nec Corp. v. Hyundai Elecs. Indus. Co., Ltd.*, 30 F. Supp. 2d 546, 553 (E.D. Va. 1998) (rejecting defendant's construction as "unpersuasive as it would frustrate the patent's purpose.  Nor is there any doubt that the patent's purpose is a proper interpretive guide"); *Kenall Mfg. Co. v. H.E. Williams, Inc.*, No. 09 C 1284, 2013 U.S. Dist. LEXIS 13724, *6 (N.D. Ill. Feb. 1, 2013) ("hyper-technical

- 16 -

readings of patents are to be avoided where they would arrive at an absurd result rather than achieve a common sense meaning").

## IV. "releasably attached"

| Claim Term/Phrase | Welch Allyn's Construction | OBP's Construction |
|---|---|---|
| "releasably attached"<br><br>(*Claims 1, 9*) | Able to be detached | The portable illumination assembly is capable of being separated intact from the speculum without the use of tools and without breakage or disassembly. |

Claims 1 and 9 require that the portable illumination assembly be "releasably attached" to the handle portion of the lower blade in the case of Claim 1, or either the lower or upper blade in the case of Claim 9.

OBP proposes that this straightforward claim limitation should be construed to mean that the "portable illumination assembly is capable of being separated intact from the speculum without the use of tools and without breakage or disassembly." But with no support from the patent or case law and just conclusory "take my word for it" statements from Mr. Leinsing, this construction should be rejected.

As an initial matter, both parties agree that the portable illumination assembly is able to be detached, and, in fact, both parties cite to the same portion of the specification that teaches this:

> The housing 508 is **releasably attached** to the top blade 512 according to this embodiment although the housing can be alternatively positioned relative to either the top blade or the lower blade 516 of the speculum 510, as discussed herein. **Clips, fasteners or other conventional means can be used to releasably attach** the housing 508 to the blade 512, wherein the illumination assembly 504 can also be used separately as an examination light **when detached**.

('175 Patent, Col. 23, lines 13-21 (emphasis added); *see* Welch Allyn's Brief, p. 20 (citing the same); OBP's Brief, p. 14 (citing to the '175 Patent, Col. 23, lines 17-21). Consistent with the

- 17 -

ordinary and customary meaning of the phrase, when the claims require that the portable illumination assembly be "releasably attached" to one of the blades, they clearly mean that the portable illumination assembly is able to be detached from the blade.

But OBP takes further steps to impermissibly narrow the claims. Despite OBP's position that the only way to give meaning to the term "releasably" is by prohibiting the use of tools altogether, the claims simply do not restrict the use or non-use of tools to facilitate detachment. (*See* OBP's Brief, p. 15.)  OBP also offers no case law in support of its position.  As noted above, the specification teaches that "[c]lips, fasteners or other conventional means can be used" for releasable attachment.  The patent does not preclude the use of tools, and, in fact, such "fasteners" or "conventional means" for detachment may call for tools.  *See, e.g.*, *V-Formation, Inc. v. Benetton Group SPA*, 401 F.3d 1307, 1310-1313 (Fed. Cir. 2005) ("releasably attached" fasteners include threaded bolts and screws); *Dorel Juvenile Group, Inc. v. Graco Children's Prods., Inc.*, 429 F.3d 1043, 1044-1047 (Fed. Cir. 2005) ("removably attached" and "removably secured" components of a car seat did not require that the seat be easily removable but, rather, that the seat be capable of being removed from the base, even if that required the use of special tools because the specification did not describe relative ease of removal as a claim requirement).

Similarly, there is nothing in the claim language that would require the detachment of the illumination assembly to occur without disassembly of the speculum.   (*See* OBP's Brief, pp. 14-15.)  In fact, as exemplified by the partially disassembled speculum depicted in Figure 37, the patent contemplates a releasably attached illumination assembly even where the speculum is partially disassembled.  Thus, where the claims do not mention disassembly, a limitation directed toward disassembly should not be read into the claims.  *See, e.g.*, *Thorner*, 669 F.3d at 1366 ("We do not read limitations from the specification into claims; we do not redefine words.  Only

- 18 -

the patentee can do that.").  OBP's construction should be rejected, and the Court should adopt

the construction proposed by Welch Allyn.[5]

## V.       "portable illumination assembly"

| Claim Term/Phrase | Welch Allyn's Construction | OBP's Construction |
|---|---|---|
| "portable illumination assembly"  (*Claims 1, 9, 18*) | A self-contained illumination assembly that is not connected to a non-portable power source, such as a cord or other tether to a power supply | A fully enclosed housing holding the components of a light, which is attachable and detachable from a speculum without undue effort, disassembly or breakage for ease of moving from one speculum to another for reuse, or for use as a stand-alone examination light. |

Asserted Claim 1 requires that the claimed specula have:

> a **portable illumination assembly** defined by a housing **that retains a portable power supply**, at least one LED and an integral curved light pipe made from a light transmissive material, said at least one LED being adjacent to and optically coupled to a proximal end of said integral curved light pipe . . . .

(Emphasis added.)  Asserted Claims 9 and 18 commonly require that the claimed specula have "a

**portable illumination assembly comprising a portable power source**, at least one LED, and a

mechanism for energizing said at least one LED within a common housing . . . ."  (Emphasis

added.)

OBP erroneously argues that portability means mere movability and that the "'portable

illumination assembly' cannot inherently contain the limitation of including a 'portable power

source' because a 'portable power source' is separately listed in the claims."  (*See* OBP's Brief,

pp. 13; *see generally* OBP's Brief, pp. 9-14.)  Yet, the claim language itself, which OBP ignores,

clearly defines the portable illumination assembly as "**retaining**" (Claim 1) or "**comprising**"

---

[5]  Because the claims do not restrict the use or non-use of tools nor is detachment without disassembly required, Mr. Leinsing's position is "clearly at odds with the claim construction mandated by . . . the written record of the patent," such that Mr. Leinsing's Declaration should be accorded no weight.  *See Kara Tech., Inc.*, 582 F.3d at 1348; *see also Vitronics Corp.*, 90 F.3d at 1584 (expert testimony to be given no weight when "patent documents are unambiguous").

(Claims 9 and 18) a "portable" power supply.  Further, the teaching in the specification makes clear that the term "portable" consistently refers to an illumination assembly requiring a non-portable power supply, such as AC power, or cordless power supply.  (*See, e.g.*, '175 Patent, Col. 2, lines 17-29 (In addition, the use of corded illumination 25 assemblies requires **a non-portable (e.g., AC) power supply** to be present in the examination area, making field examinations difficult."); Col. 18, lines 61-67 ("In addition and also like the preceding, the speculum 1204 is configured to permit interchangeable attachment of either a corded illumination assembly such as 140, FIG. 1, or **a cordless (portable) illumination assembly** 1260."); Col. 16, lines 6-13; Col. 9, lines 24-45; Col. 11, lines 27-35, Col. 13, lines 20-25 (emphasis added).)  This is consistent with the inventive solution to the "impediment to examining a patient" caused by "corded illumination assemblies."  (*See* '175 Patent, Col. 2, lines 17-29.)  *See also Apple Computer*, 234 F.3d at 25 ("the claim must be interpreted in light of the written description and the purpose of the invention").[6]

The fact that the specification also teaches other embodiments use a cord to supply power is of no moment.  It is the language of the claims that govern the scope of the invention, and if the language of the claims exclude certain exemplary embodiments disclosed in the specification that use a corded or tethered power supply, such a construction is permissible.  *See Johnson & Johnston Assoc. v. R.E. Service Co.*, 285 F.3d 1046, 1052-1055 (Fed. Cir. 2002) (*en banc*) ("Consistent with its scope definition and notice functions, the claim requirement presupposes that a patent applicant defines his invention in the claims, not in the specification.  After all, the claims, not the specification, provide the measure of the patentee's right to exclude" and holding

---

[6] Despite arguing that the "portable illumination assembly" disclosed in the "'175 Patent does not . . . define 'portable' and 'cordless' as synonymous[,] OBP also cites to this portion of the specification confirming that "cordless" is synonymous with "portable."  (*See* OBP's Brief, p. 13, 14 (citing Col. 18, lines 61-67.)

- 20 -

that the claim language of aluminum did not encompass alternatives to aluminum, though such alternatives were disclosed in the specification); *see also Sri Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) ("If everything in the specification were required to be read into the claims, or if structural claims were to be limited to devices operated precisely as a specification-described embodiment is operated, there would be no need for claims . . . . Nor would a basis remain for the statutory necessity that an applicant conclude his specification with claims particularly pointing out and distinctly claiming the subject matter [of] his invention.  It is the *claims* that measure the invention") (quotations and citations omitted; emphasis in original).

OBP further argues that the "portable illumination assembly" must be "attachable and detachable . . . without undue effort, disassembly or breakage for . . . reuse, or use as a stand-alone examination light."  (*See* OBP's Brief, pp. 9-11.)

Besides begging the question of what would constitute "undue effort" and "disassembly or breakage," there is nothing about the term "portable illumination assembly" that itself requires the assembly to be attachable or detachable from the speculum.  Other claim terms, such as the term "releasably attached" are directed to that issue.  Thus, OBP's attempt to import into the term "portable illumination assembly" a requirement that it be "attachable and detachable from a speculum without undue effort, disassembly or breakage" would improperly render terms like "releasably attached" redundant and unnecessary.  *See, e.g.*, *John Mezzalingua Assocs. v. Corning OBP Inc.*, No. 5:11-cv-761 (GLS/DEP), 2012 U.S. Dist. LEXIS 166275, *31-*32 (N.D.N.Y. Nov. 21, 2012) (the "additional constraints echo limitations contained elsewhere within the claims of those patents and would render those additional limitations redundant if imported into the definition").

- 21 -

Moreover, while there are exemplary embodiments in the specification in which the illumination assembly can be used in the ways described in OBP's constructions, the claims do not require it.  By importing limitations from the specification into the claims, OBP seeks to have the Court commit the "cardinal sin" of claim construction.  *See, e.g.*, *Teleflex, Inc.*, 299 F.3d at 1324 (holding that it is a "cardinal sin" to import limitations from the specifications into the claim); *Kara Tech. Inc.*, 582 F.3d at 1348 ("The patentee is entitled to the full scope of his claims, and we will not limit him to his preferred embodiment or import a limitation from the specification into the claims.").

OBP also argues that the portable illumination assembly must contain a "fully enclosed housing."  (*See* OBP's Brief, pp. 9-11.)   Yet, there is nothing about the term "portable illumination assembly" that, as OBP argues, requires the assembly to have a fully enclosed housing or suggests that a fully enclosed housing is necessary for self-containment.  (*See* OBP's Brief, pp. 10-11.)   In fact, the parties have agreed that the claim term "housing" in Claim 1 should be construed as "an enclosure that retains the portable power supply" and the term "within a common housing" in Claims 9 and 18 should be construed as "an enclosure that retains within it the components of the portable illumination assembly."  (*See* Welch Allyn's Brief, p. 8 n.1 (citing the Joint Claim Construction Statement).)   OBP may not now seek to narrow the construction of "housing" and "within a common housing," let alone through its construction of "portable illumination assembly."[7]  OBP's construction should be rejected.

---

[7] Moreover, OBP's position is undermined by the specification which teaches, for example, that the "LED energizing means can be disposed on the exterior of the housing of the portable illumination assembly."  ('175 Patent, Col. 2, lines 59-60.)

## <u>Conclusion</u>

Welch Allyn respectfully requests that the Court construe the disputed terms of the '175 Patent as set forth herein and in Welch Allyn's Opening Brief.

Date:  June 25, 2015                    **BARCLAY DAMON, LLP**

 

 

By: _____/s/ Douglas J. Nash_____
        Douglas J. Nash (511889)
        Jason S. Nardiello (107138)
        Bella S. Satra (518204)

Office and Post Office Address
One Park Place
300 South State Street
Syracuse, New York 13202
Telephone:   (315) 425-2700
Facsimile:   (315) 425-2701
E-Mail:       dnash@barclaydamon.com

*Attorneys for Plaintiff*
Welch Allyn, Inc.

- 23 -

9291466

**CERTIFICATE OF SERVICE**

I certify that on June 25, 2015, I caused a copy of the foregoing document, Welch Allyn, Inc.'s Responsive Claim Construction Brief, as well as the accompanying documents, to be filed with the Clerk of the Court via the CM/ECF system, which gave notice to all counsel who have made an appearance in this action.


                                        /s/ Douglas J. Nash
                                        Douglas J. Nash

9291466